**ARTHUR EDWARD BERRY v. STATE OF FLORIDA**

36 So. (2nd) 784                                    June Term, 1948
July 30, 1948                                        En Banc
Rehearing denied September 27, 1948

*John R. Parkhill,* for appellant.

*J. Tom Watson,* Attorney General, *Ernest W. Welch,* Assistant Attorney General, and *Lucille Snowden,* Special Assistant Attorney General, for appellee.

ADAMS, J.:

Arthur Edward Berry was convicted of murder and sentenced to death. He has appealed, and the questions submitted relate to:

1. The qualification of a juror; 2. Prejudicial conduct of the sheriff, a principal witness for the state; 3. The propriety of admitting evidence of a physical examination of the accused after arrest; 4. The sufficiency of the evidence to sustain the sentence.

The deceased, a fourteen-year-old girl, was living with her aunt, in Pasco County, and on the morning of the homicide the two of them were there alone. The two parted after breakfast, the aunt going about two hundred yards from the house to work in her garden. She left the deceased in the house to wash some clothes. After the aunt had been in the garden some time she heard someone running in a citrus grove which adjoined her house. She observed a man (this appellant) running in her direction; however, he apparently did not observe her until he was in her immediate presence. The first thing she noticed was that he was bloody and excited, and upon her inquiry he, the appellant, related that when he approached the house he heard screams in the grove and then discovered a negro making an attack upon deceased; that he presently attacked the negro, struggled with him, and finally chased the negro away; that in the affray the negro was armed with a knife and cut appellant on his hands. Appellant went in company with the aunt to a neighbor's house, where appellant called the sherif by telephone. The sheriff came, met appellant, and proceeded to investigate the crime.

Appellant related substantially the same story to the sheriff. When the sheriff failed to find footprints to corroborate appellant's story, he arrested him and lodged him in jail,

where he was subsequently questioned and examined for physical bruises. His clothes were examined, which disclosed blood on his trousers and shorts.

When the state rested its case appellant's father testified that his son was left-handed. The evident purpose was to indicate that the mortal wound was inflicted not by a left-handed person but by a right-handed person.

Appellant offered a physician as a witness, who testified to cuts on appellant's fingers. Appellant did not testify.

Upon motion for a new trial it was claimed that one of the petit jurors in the case was disqualified because the juror, Kelly, was a brother-in-law to one of the state's principal witnesses; that the juror had qualified by stating that he had no opinion of the accused's guilt, whereas, in truth, the juror lived a short distance from his brother-in-law; that he had heard the case discussed and in fact had formed an opinion that the accused was guilty.

Upon this part of the motion for a new trial the court took and heard evidence and resolved the issue against appellant. We have carefully considered all of the said evidence and are of the opinion that this question was decided correctly.

A new trial was also sought because, it was charged, after the sheriff testified he was excused from the rule and thereafter attended the jury by looking after their food and hotel accommodations and so on. On this question testimony was likewise taken, from which the trial judge ruled that the conduct of the sheriff was legal and proper. In this we find, from our study of the case, that the ruling was proper.

The third question relates to a physical examination made of the accused and the result of same being introduced in evidence. When the sheriff first came to the scene of the tragedy he observed that the zipper to appellant's trousers was down, and, in response to the sheriff's question, appellant said the zipper was busted by the negro kicking him. For that and other reasons a physical examination of appellant was made, and no bruises were found. The purpose of this was to refute appellant's story that he had engaged in an altercation

at the scene of the tragedy. ` The accused was under´arrest and in jail at the time. He did not object to removing his clothes and submitting to the examination. We find no error in the ruling of the trial court. See Touchton v. State, 154 Fla. 547, 18 So. (2nd) 752.

The last question goes to the sufficiency of the evidence. It is argued that the victim was not raped and there is no motive shown for the crime. There is no doubt that the crime stems from the sex impulse. It is also true that the victim was not raped. The only explanation we have from appellant is the one first given the sheriff. When the sheriff could find no evidence of the alleged struggle and no footprints to corroborate the story, despite the fact that the conditions of the ground were such that the tracks, if made would be clearly visible, we must draw our own conclusion, as did the court below, that appellant and no one else could have committed the murder.

What was his motive? What emotions must have raced through his excited mind, once he made his first advance to the girl, we can only surmise, as those thoughts and feelings are his alone. It is evident that the struggle began in the house. The latch to the screen door was torn loose. Some blood was in the house, broken glasses were found, and a waste basket was mashed. A knife was missing from the kitchen and never found. Tracks of appellant and deceased went into the grove a short distance from the house to where her body was found, and only appellant's tracks led away. Blood and male semen were found inside appellant's trousers and on his shorts. He explained the blood came from the girl while he was struggling with the negro. Expert evidence showed, however, that the blood did not come from the exterior of his trousers.

Most of the girl's body was exposed; she had several cuts and scratches about the face and arms. The fatal cut was in the jugular vein in the left side of the neck.

We have carefully considered the entire evidence, the indictment, the charge of the court, and it is our opinion and judgment that the evidence is sufficient and there is no error

of law in the record which would authorize us to disturb the judgment.

The judgment appealed from is affirmed.

THOMAS, C.J., TERRELL, CHAPMAN and BARNS, JJ., concur.

HOBSON, J., not participating.